UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TAMMIE S. RICCI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-651-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court

is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 16 &

17] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18

& 19]. Tammie S. Ricci ("the Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner

of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the

Plaintiff's motion, and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On October 7, 2013, the Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et. seq.*, and 1381 *et. seq.*, claiming a period of disability that began on July 1, 2013.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

[Tr. 165-78]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 124]. A hearing was held on February 10, 2016. [Tr. 33-64]. On April 19, 2016, the ALJ found that the Plaintiff was not disabled. [Tr. 18-27]. The Appeals Council denied the Plaintiff's request for review [Tr.1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on November 8, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. Having considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record, the Court finds that the medical history of the Plaintiff and the content of the ALJ's decision are not in dispute and therefore need not be repeated here.

## II.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. [Doc. 17 at 6-13]. Specifically, the Plaintiff maintains that the ALJ did not properly weigh the opinion of her treating neurologist, Timothy Braden, M.D., and the ALJ mischaracterized the medical evidence regarding the Plaintiff's statements concerning the side effects of her weekly medication prescribed by Dr. Braden. [*Id.*].

4

The Plaintiff came under the care of Dr. Braden in July 2013 when she presented to Fort Sanders Regional Medical Center with complaints of frontal head pressure. [Tr. 305-06]. Based on an MRI of the brain and a lumbar puncture, Dr. Braden diagnosed the Plaintiff "with probably mild/early multiple sclerosis . . . though she has not had any clinical evidence consistent with multiple sclerosis." [Tr. 357]. Given the mild findings on testing and the Plaintiff's otherwise normal examination, Dr. Braden prescribed weekly Avonex injections. [*Id.*].

The Plaintiff continued to be seen by Dr. Braden every few months through November 2015. Dr. Braden typically noted that the Plaintiff had "done well" or was doing "ok." [Tr. 350, 352, 354, 356, 458, 460, 464]. Although the Plaintiff reported "flulike" symptoms, such as achiness, pain, and chills, following her Avonex injections, Dr. Braden noted that the Plaintiff tolerated Avonex "without any major reactions." [Tr. 350, 460, 462, 464, 466]. The Plaintiff also generally reported symptoms including intermittent muscle spasms, dizziness, weakness, scattered neuropathic pain, numbness, tingling, occasional shakiness, and dizziness. [Tr. 350-57, 456-67]. Nonetheless, examination findings were largely unremarkable and normal. The Plaintiff often displayed normal range of motion, normal muscle strength and tone, normal sensation and coordination, normal gait, and her memory, attention span, and concentration appeared appropriate. [*Id.*]. Moreover, Dr. Braden consistently observed that the Plaintiff did not have any clinical evidence consistent with multiple sclerosis. [*Id.*].

On November 10, 2014, Dr. Braden completed a "Multiple Sclerosis Medical Questionnaire" provided by Plaintiff's counsel. [Tr. 451-52]. Therein, Dr. Braden opined that the Plaintiff did not have multiple sclerosis characterized by (1) significant and persistent disorganization of motor function in two extremities, (2) visual impairments, or (3) significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity.

[Tr. 451]. Dr. Braden opined that the Plaintiff was capable of sustaining full-time work with the following limitations: she could frequently use her hands for fine manipulation; she could sit for eight hours (and up to one hour uninterrupted), stand for three hours (and up to 30 minutes uninterrupted), and walk for three hours (and up to 30 minutes uninterrupted); she could frequently lift up to 10 pounds and occasionally lift up to 20 pounds; and she could occasionally bend, stoop, squat, kneel, climb stairs, crawl, and reach above her shoulders. [Tr. 450-51]. Dr. Braden described the Plaintiff's overall pain level and ability to perform everyday activities as "mild." [*Id.*]. Dr. Braden also noted, however, that the Plaintiff's condition would cause problems with stamina and endurance, her condition caused excessive fatigue, and she required five hours of bed rest daily. [*Id.*].

Dr. Braden completed a second, identical questionnaire on November 10, 2015. [Tr. 453-54]. Dr. Braden continued to opine that the Plaintiff's pain level and ability to perform daily activities was "mild" but noted that her medication caused said effects that could affect her alertness and awareness. [Tr. 453]. In addition, the Plaintiff no longer required bed rest. [*Id.*]. Remaining limitations differed slightly in that the Plaintiff was found to be able to sit for eight hours, stand and walk for four hours, lift and carry up to 10 pounds continuously and up to 20 pounds frequently, and frequently bend, stoop, squat, and kneel. [Tr. 454]. Dr. Braden relayed that his opinion was "not based on objective evidence but is based on [the Plaintiff's] history [and] description of daily activity/limitation." [*Id.*].

The ALJ concluded that the Plaintiff had severe impairments of multiple sclerosis and cervical protrusion at C5-6 but that neither impairment, nor combination of impairments, was of listing level severity. [Tr. 20-21]. In the RFC portion of the decision, the ALJ found the Plaintiff had the RFC to perform light work with the following limitations: she can frequently balance,

stoop, kneel, crouch, crawl and climb, except she can occasionally climb ladders, ropes, and scaffolds; she is restricted against concentrated exposure to heights or hazards; she is limited to simple, routine, and repetitive tasks and lower level detail work; and she cannot handle high production demands and changes must be infrequent and gradual. [Tr. 21]. The ALJ discussed Dr. Braden's treatment notes in detail and weighed his November 10, 2014 opinion. [Tr. 22-25].

The ALJ explained that she afforded the Plaintiff the benefit of the doubt in evaluating the consistency of the Plaintiff's statements in light of the objective medical evidence, noting that while the Plaintiff reported symptoms such as head pressure, dizziness, and slurred speech, a scan of her brain "was essentially normal, with the exception of the left frontal periventricular white matter extending into the corpus callosum," and Dr. Braden repeatedly noting that the Plaintiff did not have any clinical evidence of multiple sclerosis. [Tr. 23-24]. The ALJ explained that to accommodate the Plaintiff's complaints of dizziness, weakness, and cervical spine dysfunction, the Plaintiff would be restricted from concentrated exposure to heights or hazards. [Tr. 24]. In addition, to accommodate problems with pain, fatigue, stamina and endurance, which would interfere with the Plaintiff's daily activities in a work environment, the ALJ limited the Plaintiff to simple, routine and repetitive tasks and low level detailed work with no high production demands and infrequent changes. [Tr. 24].

As to Dr. Braden's November 2014 opinion, the ALJ "[g]enerally . . . afforded greater weight" to Dr. Braden's findings due to his treatment history and degree of contact with the Plaintiff. [Tr. 25]. The ALJ concluded that an RFC of light work was "somewhat less restrictive than Dr. Braden's assessment. However, to accommodate for excessive fatigue and pain, [the Plaintiff] has been restricted to no concentrated exposure to heights or hazards; limited to simple, routine and repetitive tasks and lower level detailed work; no high production demands and

infrequent/gradually introduced changes." [*Id.*]. In addition, the ALJ gave great weight to the opinions of non-treating, non-examining state agency physicians who opined the Plaintiff had an RFC for light work with frequent postural restrictions and no concentrated exposure to hazards. [Tr. 25, 69-71, 90-91]. The ALJ found their opinions consistent with the findings made in the disability determination and their "restrictions deemed necessary, secondary to intermittent dizziness." [Tr. 25].

The Plaintiff argues that although the ALJ deferred to Dr. Braden's November 2014 opinion, the ALJ did not include the need for daily bed rest and failed to provide "good reason" for rejecting the limitation. [Doc. 17 at 7-8]. The Plaintiff observes that by assessing a RFC of simple, routine, repetitive and lower-level detailed work that involves no high production demands and only infrequent change, the ALJ relied on the Plaintiff's reports of excessive fatigue and pain. [*Id.* at 9]. According to the Plaintiff, any discussion regarding pain and fatigue would necessarily have to address the bed rest provision but the ALJ failed to discuss the specific limitation. [*Id.* at 9]. Moreover, because the RFC also accommodates problems with stamina and endurance, the Plaintiff submits that Dr. Braden's bed rest provision is consistent with objective medical findings. [*Id.*].[2]

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically

---

[2] The Court notes that although Dr. Braden authored two opinions, the ALJ's decision and the assignment of errors raised by the Plaintiff focus on Dr. Braden's November 2014 opinion. Social Security Ruling 96-2p notes that while a treating source may author multiple opinions, "[a]djudicators must use judgment based on the facts of each case in determining whether, and the extent to which, it is necessary to address separately each medical opinion from a single source." 1996 WL 374188, at *2 (July 2, 1996). Therefore, because no error has been alleged with regard to Dr. Braden's second opinion, the Court limits its discussion to the specific errors raised by the Plaintiff as to Dr. Braden's November 2014 opinion.

acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Court finds that the ALJ did not err in weighing Dr. Braden's opinion. This Court, like many others, has held "that an ALJ is not required to discuss all of the relevant evidence in the record, nor is he required to comment on every finding in a medical opinion" for the decision to stand. *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *adopted by*, No. 3:12-CV-78, 2012 WL 4172138 (E.D. Tenn. Sept. 18, 2012); *see Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir.2010) ("Neither the ALJ nor the Council is

required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); *Carter v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 998, 1008 (S.D. Ohio 2015) ("An ALJ is not required to discuss every piece of evidence in the record or include every limitation in a RFC."); *Beauchamp v. Comm'r of Soc. Sec.*, No. 1:12 CV 2839, 2014 WL 1154117, at *11 (N.D. Ohio Mar. 21, 2014) ("Simply put, the ALJ was not required to discuss every limitation or piece of medical evidence put before him . . . ."); *Titus v. Astrue,* No. 1:11CV1286, 2012 WL 3113165, at *11 (N.D. Ohio June 12, 2012), *adopted by*, No. 1:11CV01286, 2012 WL 3113160 (N.D. Ohio July 31, 2012) ("However, the ALJ was not required to discuss each limitation [by a treating physician] separately.").

Here, it is evident that the ALJ considered the bed rest provision as she cited to the limitation in discussing Dr. Braden's opinion. [Tr. 24]. Moreover, while the ALJ did not explicitly state why the limitation was not included in the RFC, the ALJ's decision makes clear that the limitation was not credible despite giving greater weight to Dr. Braden's opinion. The ALJ explained that certain RFC restrictions—that is, simple, routine and repetitive tasks, lower level detailed work, no high production demands, infrequent changes, and no concentrated exposure to heights or hazards—accommodated the Plaintiff's complaints of fatigue and pain, as well as Dr. Braden's finding that the Plaintiff's condition would cause problems with stamina and endurance. By the Plaintiff's own admission, a need for daily bed rest is related to the Plaintiff's complaints of pain and fatigue. The ALJ provided a reasoned explanation why the foregoing limitations sufficiently accommodated the Plaintiff's allegations of pain and fatigue. Therefore, by specifically explaining why the Plaintiff's RFC accommodates her impairments and associated symptoms, with particular reference to problems with fatigue, pain, stamina, and endurance, the ALJ provided a sufficient analysis that makes clear to subsequent reviewers the weight assigned

10

to Dr. Braden's opinion and the reasons for that weight. The ALJ was not required to provide a separate line of reasoning as to why a bed rest provision was unwarranted.

The Plaintiff further contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ mischaracterized the evidence when she noted that the Plaintiff "tolerated Avonex without any major reactions." [Doc. 17 at 10-13 (quoting Tr. 23)]. The Plaintiff cites to Dr. Braden's treatment notes which include the Plaintiff's reports of flulike symptoms, pain and achiness for several days following injections, and her testimony that Avonex was difficulty to tolerate. [*Id.*]. The Court is not persuaded by the Plaintiff's argument. Dr. Braden repeatedly noted that the Plaintiff did not experience any major reactions with her medication. [Tr. 350, 460, 462, 464, 466]. Therefore, the ALJ relayed Dr. Braden's own reports and did not misstate the evidence.

In light of Dr. Braden's treatment notes, which largely document normal examination findings and no clinical evidence of multiple sclerosis, Dr. Braden's November 2014 opinion, and the opinions offered by the state agency physicians, the Court finds the ALJ provided "good reason" for the weight assigned to Dr. Braden's opinion, and the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge